### D. M. OSBORNE & Co. *v.* BRYCE and others.

*(Circuit Court, E. D. Wisconsin.* February 3, 1885.)

1. PROMISSORY NOTES—ACTION AGAINST GUARANTOR—SALE OF MACHINES—DEFENSE OF BREACH OF WARRANTY.

    A breach of warranty by the principal in a transaction cannot be set up by a guarantor when sued on his contract of guaranty.

2. SAME—COUNTER-CLAIM—FAILURE OF CONSIDERATION FOR ORIGINAL CONTRACT.

    A mere counter-claim growing out of a breach of warranty is not available to a guarantor or surety, whether he be an indorser for value or merely an accommodation indorser; but if there is any fact from which a total failure of consideration for the original contract arises, the guarantor or surety has a right to avail himself of that fact.

At Law.

*G. D. Emery* and *Chapin, Dey & Friend,* for plaintiff.

*Charles B. Pratt* and *W. C. Williams,* for defendants.

DYER, J. This is a suit at law upon money demands, brought by the plaintiff corporation, a citizen of New York, against the defendants, Charles H. Sproat, Samuel G. Ormiston, and John Bryce, as copartners under the firm name of Sproat, Ormiston & Co. It is alleged that Sproat is a citizen of Minnesota, that Ormiston is a citizen of Dakota, and that Bryce is a citizen of Wisconsin. Only the last-named defendant has been served with process, and appears in the action. The complaint contains 24 causes of action. In the first cause of action it is alleged that at a time and place in the territory of Dakota, particularly stated, one Foley executed his promissory note, whereby he promised to pay to the order of the plaintiff, on a day named, a certain sum of money, with interest; that as part of the same transaction the defendants jointly and severally, by their firm name, for value received, duly indorsed and guarantied the payment

of said note to the plaintiff, at maturity, and waived demand, protest, and notice of non-payment thereof; that this indorsement, guaranty, and waiver was as follows: "For value received, I (or we) hereby guaranty the payment of the within note at maturity, or any time thereafter, and waive demand, protest, and notice of non-payment thereof. [Signed] SPROAT, ORMISTON & Co." It is further alleged that thereupon, in good faith, and for a valuable and sufficient consideration, the note and guaranty were delivered to the plaintiff, who became the owner and holder thereof. Demand of payment, and refusal to pay by the defendants, is then alleged. All the other causes of action are similar to the first, except that promissory notes of different dates and amounts, by different makers, and payable at different times, are therein set forth, the defendants being charged as guarantors upon all the notes. Copies of the notes are annexed to the pleadings, which show that the terms of those obligations, and the guaranty on the back of each, correspond with the allegations of the complaint.

The aggregate amount of the notes is $2,736.35, for which amount, with interest, judgment is demanded against the defendants. The answer of the defendant Bryce admits the citizenship of the defendants as alleged in the complaint, and their copartnership at the several times therein stated. To the first cause of action he then sets up the following affirmative defense: That on the fourth day of December, 1880, Sproat, Ormiston & Co. entered into a written contract with the plaintiff, by the terms of which they became the agents of the plaintiff to sell certain machinery mentioned therein; that the note mentioned in the first cause of action was executed by the maker thereof, Foley, at the time and place, and for the amount stated in the complaint; that this note, at the time it was executed, and before guaranty of payment by Sproat, Ormiston & Co., and before delivery of the same to the plaintiff, was the property of the plaintiff, and the guaranty was made after the note thus became the plaintiff's property, and not at the request of the maker, or for his benefit, but that it was made at the request of the plaintiff, and in accordance with the terms of the contract between the plaintiff and Sproat, Ormiston & Co., and without any other consideration than that stated in the answer; that the maker of the note, at the time of its execution and delivery, was pecuniarily responsible; that the note was taken by Sproat, Ormiston & Co. for and in behalf of the plaintiff, and for its benefit; that no notice has been given the defendant Bryce by the plaintiff that the maker of the note was not, at the time it was executed and delivered, pecuniarily responsible, or that the note was bad or hard to collect, as, by the terms of the contract referred to, it is alleged the plaintiff was bound to do if such were the facts; that the note was given as part consideration for a harvester sold by the plaintiff to Foley; that the plaintiff warranted to Foley that the harvester was well built, of good material, and capable of cutting, if properly

managed, from 10 to 15 acres per day; and that Foley was thereby induced to purchase the machine. The breach of this warranty is then charged, and it is alleged that the guaranty of Sproat, Ormiston & Co. was made and based upon this warranty, as per the terms of said contract, and upon no other consideration, and that the guaranty would not have been given had not the plaintiff so warranted the machine sold to Foley.

The same defense is interposed to each of the several causes of action, the defenses differing only with respect to the names of the makers of the different notes guarantied by Sproat, Ormiston & Co.; and upon the defenses so alleged, the defendant Bryce demands judgment that the plaintiff take nothing by its suit. The plaintiff now moves for judgment against the defendant Bryce upon the pleadings; the general ground of the motion being that the answer sets up no valid defenses to the plaintiff's demands, and by stipulation between the parties the court is now to pass upon this motion.

The motion, in the form in which it is made and submitted, seems to be equivalent to a demurrer to the answer, and the principal question argued is whether it is competent for the defendant Bryce to set up as a defense to the action a breach of the warranty given by the plaintiff to the purchasers of machines. The determination of the question thus presented appears largely to depend upon the construction to be given to the contract entered into between the plaintiff and Sproat, Ormiston & Co. The contention of the defendant is that Sproat, Ormiston & Co. had already by their contract, in legal effect at least, guarantied or become liable for the payment of the purchase price of the machines; that it was not necessary to guaranty payment of the notes; that the machines were in the outset sold conditionally to Sproat, Ormiston & Co.; that the defendants became liable therefor under the contract; that, therefore, the warranty given by the plaintiff to purchasers of machines inured to the benefit of Sproat, Ormiston & Co.; and that the consideration for the guaranty of the notes was the plaintiff's warranty of the machines. It is true that the contract, in its preliminary recitals, states that the parties have bargained for the conditional sale of the machines to Sproat, Ormiston & Co.; but, looking at the contract in its entirety, it seems evident that what the parties contemplated was a sale of the machines as the property of the plaintiff, by Sproat, Ormiston & Co., as the plaintiff's agents, to third parties, with an obligation on the part of Sproat, Ormiston & Co. to account for the proceeds in the manner prescribed, and with a reserved right in the plaintiff, in certain contingencies, to make Sproat, Ormiston & Co. their absolute debtors for the machines. Many of the important provisions of the contract contain language expressive of the relation of principal and agent. If, by virtue of the contract, a sale outright of the machines to Sproat, Ormiston & Co. was intended, or if there was thereby created an absolute liability to pay for all machines furnished, many of the pro-

visions of the contract would seem to be superfluous and quite meaningless. The defendants were to receive the machines under the contract at certain retail prices, less a certain discount for commissions. They were not to sell or become interested in the sale of any mowing and reaping or self-binding machines other than those manufactured by the plaintiff. Their agreement was, as we find it expressed in the contract, to make all reasonable efforts to sell the machines to responsible persons only, and only within certain territory; and this agreement, which also includes an obligation with reference to advertising machines and canvassing territory, supports the view that an agency was established. And in case of violation of these stipulations it was declared, in effect, that Sproat, Ormiston & Co. were to be liable for machines at their full retail price, without any discount or commission.

The defendants also contracted to make prompt settlement with purchasers of machines upon delivery of the same, and to see that all machines sold were properly set up and operated; that all machines received from the plaintiff should be sold either for cash, or good and approved notes, or for part cash and part good notes. And it was expressly stipulated that all such machines should be and remain the property of the plaintiff until so sold or otherwise settled for, as provided in the contract, and that, when sold for cash, either in whole or in part, the moneys received, to the amount of the price for said machines, should be received by Sproat, Ormiston & Co. as the moneys of the plaintiff, and be transmitted to the plaintiff without delay; that when not wholly paid for in cash, a note of the form prescribed by the plaintiff should be taken for the unpaid balance, signed by the purchaser, and payable to the order of the plaintiff, and that the same should be indorsed, and the payment thereof guarantied by Sproat, Ormiston & Co., waiving demand, protest, and notice of nonpayment; that all such notes should become and be the property of the plaintiff immediately when executed, and be transmitted to the plaintiff without delay; such notes to bear 10 per cent. interest from the date of the sale or delivery of the machine for which they were given. It was also provided by the contract that for the purpose of ascertaining the responsibility of makers of notes given in payment of machines under the contract, an agent of the plaintiff should have the privilege of submitting the same to a cashier of a bank, or some other responsible person acquainted with the general pecuniary standing and responsibility of the people of the neighborhood, and that any of such notes which he should pronounce bad, or hard to collect of the makers thereof, might be returned to Sproat, Ormiston & Co., who should give cash or other notes therefor, which notes such cashier, or other responsible person, should pronounce good and collectible. Embodied in the contract is the form of a warranty which was to be given to purchasers on sales of machines. This warranty is as follows:

"All our machines are warranted to be well built, of good material, and capable of cutting, if properly managed, from ten to fifteen acres per day. If, on starting the machine, it should in any way prove defective and not work well, the purchaser shall give prompt notice to the agent of whom he purchased it, and allow time for a person to be sent to put it in order. If it cannot then be made to do good work, the defective part will be replaced, or the machine taken back and the payment of money or notes returned. Keeping the machine during harvest, whether kept in use or not, without giving notice as above, shall be deemed conclusive evidence that the machine fills the warranty."

Another provision of the contract was this: that in case any of the machines should remain unsold at a time specified, it should be optional with the plaintiff then or at any time thereafter to receive them back, or to require payment therefor by Sproat, Ormiston & Co. at the price specified in the contract, less the discount, with interest, or to require a renewal of the contract for such machines by Sproat, Ormiston & Co.; and in case the plaintiff should elect to receive back such unsold machines, then Sproat, Ormiston & Co. agreed to store the machines without charge until a certain time, and pay all local taxes that might be assessed upon them, and to deliver them at any time required, at any convenient railroad depot, free of all back freight or charge for storage or handling; and it was also agreed either to renew the contract or make a new one with the plaintiff upon certain terms; in either case such contract to cover such unsold machines. Or, in case the plaintiff should elect to receive back any of such machines, then Sproat, Ormiston & Co. agreed to settle and pay for them, and give their notes for the amount thereof, payable at specified times, with interest.

There was also a clause in the contract by virtue of which the plaintiff reserved the right to revoke the contract at any time upon the happening of certain contingencies, and that immediately upon such revocation all the machines previously delivered to Sproat, Ormiston & Co., and remaining unsold, should be deemed to be in the possession of the plaintiff, without any claim thereon by Sproat, Ormiston & Co.; and that any sales made, changing the conditions, prices, terms of sale or warranty, as provided in the contract, should be made at the risk, responsibility, and cost of Sproat, Ormiston & Co.

Thus it will be seen that under certain circumstances occurring in the prosecution of the business, or upon the happening of certain contingencies, the plaintiff was to have and did have the right to treat Sproat, Ormiston & Co. as its absolute debtors for machines furnished them and remaining unsold. Still, it was evidently contemplated that all machines sold should be disposed of as the property of the plaintiff, and that all notes taken and moneys received on account of sales should also be the property of the plaintiff in its absolute right. And the court does not see how the conclusion is to be avoided, that in the sale of machines, Sproat, Ormiston & Co. were acting as the plaintiff's agents or representatives, not themselves holding the title

to the machines, but liable as such agents to account for the proceeds of sales. It does not follow that because in certain contingencies the plaintiff had the right or option under the contract to hold Sproat, Ormiston & Co. liable for the machines, they are to be regarded as chargeable in the first instance, and in any event, with the retail price of the machines. If the parties dealt with the machines sold as the property of the plaintiff, it may well be assumed that the relation between them as to such machines was that of principal and agent, and that they understood and intended that the plaintiff was to look for payment to the maker of the note and the subsequent guarantors, either or both. Then, as the court understands the pleadings and the contract, (a copy of which is annexed to the answer,) Sproat, Ormiston & Co. sold the machines in question to the various makers of the notes in suit as the property of the plaintiff, and in behalf of the plaintiff executed to such purchasers the warranty which the contract required to be given in each case of sale. This warranty was the obligation of the plaintiff. From the allegations of the answer it is evident that the remedy which the purchasers of machines would have if there was a breach of the warranty, would be one against the plaintiff, and not against Sproat, Ormiston & Co.

The question, therefore, is, does a breach of this warranty alone constitute a defense to this suit against Sproat, Ormiston & Co. upon their contract of guaranty, by virtue of which they guarantied the payment of the notes received on the sale of the machines? The court is of the opinion that it does not. The breach of warranty, if shown, would not give the defendants a right of action against the plaintiff, nor necessarily cause them any damage. The makers of the notes might have a right of action against the plaintiff for damages sustained by them in consequence of the breach, or they might set off or recoup their damages in a suit against them upon the notes. There is no averment in the answer that Sproat, Ormiston & Co., or the defendant Bryce, have sustained any injury on account of the alleged failure of the machines to answer the requirements of the warranty. There is no allegation that the makers of the notes have sought to enforce any remedy against the defendants, or that they are under any liability to such makers on account of the alleged breach of warranty. Until some injury, actual or threatened, has resulted to the defendants from some claim made against them by the makers of the notes, how can it be said that they can avail themselves of the defense here interposed, in an action wherein their liability to the plaintiff as guarantors of the notes is sought to be enforced? The makers of the notes can, I think, alone elect to set up the defense of breach of warranty given on the sale of the machines, and they are not parties to this action. The defense is one not arising out of the defendants' contract of guaranty. The liability of the plaintiff, if any, resulting from a breach of their warranty, is one wholly in favor of the purchasers of the machines. It is hardly correct to say that the consideration

for the guaranty of the notes by the defendants was the plaintiff's warranty of the machines.

Looking at the contract in question from its four corners, so to speak, the consideration for the guaranty consisted, among other things, of the benefits and profits which Sproat, Ormiston & Co. were to realize from sales of the plaintiff's machines, and from the relation in which they stood to the plaintiff as its representatives, having, by virtue of the contract, the right to engage in the business of selling machines for the plaintiff. They chose to agree that they would guaranty the payment of all notes taken for machines which were not sold for cash. By guarantying the notes in suit they complied with that obligation of their contract. No damage or injury has resulted to them, so far as here appears, from the alleged breach of the warranty which the plaintiff gave to purchasers of machines. And the court does not perceive that there is any substantial distinction between this case and cases cited on the argument, wherein it has been held that a breach of warranty by the principal in a transaction cannot be set up by a guarantor when sued on his contract of guaranty. *Gillespie* v. *Torrance*, 25 N. Y. 306; *Lasher* v. *Williamson*, 55 N. Y. 619; *Henry* v. *Daley*, 17 Hun, 210; *Hiner* v. *Newton*, 30 Wis. 640. It is true that these were cases where indorsers, for the accommodation of the makers of notes, or the surety of the makers, sought to avail themselves, in a suit by the payee, of a breach of warranty by way of defense, recoupment, or counter-claim; but the principle governing the determination of those claims seems to be applicable to the case at bar. The defenses here interposed do not arise upon a failure of the consideration of the contract on which the plaintiff's action is founded. They are rather to be regarded as the setting off of distinct causes of action, one against the other. The non-performance of the plaintiff's engagement to the makers of the notes is not to be regarded as a failure of consideration, but as an independent cause of action which the makers of the notes, and they only, may assert. It is in their election to determine whether it shall be used defensively, or whether they will bring their own actions for the damages, or whether they will forego their claims altogether. The defendants have no control over them in this respect, and cannot borrow, or avail themselves of their right. *Lasher* v. *Williamson, supra.*

Of course it will be understood that these observations are made upon the state of facts disclosed in the pleadings before the court. In *McDonald Manuf'g Co.* v. *Moran*, 52 Wis. 203, S. C. 8 N. W. Rep. 864, it was held that, in an action against an accommodation indorser of promissory notes, the facts that the notes were given for a machine warranted to answer certain purposes, but which proved on trial to be absolutely worthless for such purposes, that the plaintiff took the notes with notice of the warranty and of the breach thereof, and after the maturity of the notes, and that the principal maker was utterly insolvent,—entitled the indorser to be subrogated to the rights which

v.23F,no.4—12

the maker would have in such a suit against him.    But such a state of facts does not appear in the case in judgment.

*Aultman* v. *Thompson*, 19 FED. REP. 490, was cited by counsel for the defendants on the argument.    The opinion of the court in that case does not disclose the facts developed at the trial upon which the ruling was made, and it is not by any means clear from the opinion that the question here presented was there either discussed or determined. Since the submission of the present motion, the record in that case has been furnished by counsel for the defendant, from which it appears that the suit was one against the defendant as guarantor of certain notes executed by one Valentine for machines sold to Valentine through the defendant, who was Aultman & Co.'s agent under a certain contract between the parties.    There, as here, was a warranty of the machines by Aultman & Co. to the purchaser.    And, among other defenses interposed, a breach of warranty was alleged. Further, that Aultman & Co. attempted by certain changes to make the machines fulfill the warranty, but failed; and that thereupon the purchaser, Valentine, rescinded the contract and tendered back the machines to Aultman & Co., and notified them that he elected to so rescind the contract and return the machines.    It was further alleged by way of defense that the defendant's guaranty was made without any knowledge of the warranties of the machines; that the changes in the machines, in order to make them fulfill the requirements of the warranties, were made without the defendant's knowledge; that they were wholly worthless, and therefore that there was a total failure of consideration for the guaranty.    Thus it will be seen that the defense in that case was not merely breach of warranty and counter-claim arising therefrom, but a rescission of the contract by the purchaser of the machines, founded upon a breach of warranty which was incorporated in the purchaser's notes, and the total failure of consideration for the guaranty.

Such a defense, as I understand the case, was held admissible by the court.    In the case at bar the defense is not based upon any rescission of the contract of purchase by the purchaser of the machines and a failure of consideration, but upon a mere counter-claim arising out of an alleged breach of warranty.    No rescission of the contract of purchase is here set up, and I understand the rule to be, under the authorities, that a mere counter-claim, growing out of a breach of warranty, is not available to a guarantor or surety, whether he be an indorser for value or merely an accommodation indorser; but that if there is any fact from which a total failure of consideration for the original contract arises, the guarantor or surety has a right to avail himself of that fact.    In the case cited the machines failed to meet the terms of the sale, and were, in fact, returned by the purchaser. And in some of the defenses to that action it was also alleged that the purchaser of the machines was wholly insolvent.    So that the case would appear to stand upon the same footing as *McDonald*

*Manuf'g Co.* v. *Moran, supra.* For the reasons stated I am of the opinion that *Aultman* v. *Thompson* is not a controlling authority upon the question here in judgment. The facts in the two cases, and the character of the defenses as disclosed by the record, are materially dissimilar.

Upon the argument of the plaintiff's motion for judgment some other points affecting the sufficiency of the defendant's answer were made, but they were points which, if ruled against the pleading, would still leave it amendable; and counsel were understood to unite in a request for the judgment of the court upon the principal question, namely: Whether the defendants, as guarantors of the notes in suit, could defend this action on the ground alone of a breach of the contract of warranty made between the plaintiff and the purchasers of the machines. Upon that question the court entertains the views which have been expressed, and, unless the difficulties that have been suggested in the way of setting up the defenses here interposed can be remedied by amendment of the answer, the court is of the opinion that these defenses are unavailing against the application for judgment.